IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
Central Division

JOSEPH PATTON                                              )
                                                           )
V.                                                         )
                                                           )
MISSOURI FARM BUREAU FEDERATION                            )
    SERVE REGISTERED AGENT:                            )
    DAN CASSIDY                                        )
    701 S. COUNTRY CLUB DR.,                           )
    JEFFERSON CITY, MO 65102                           )
                                                           )
AND                                                        )
                                                           )
MISSOURI FARM BUREAU SERVICES, INC.                        )
    SERVE REGISTERED AGENT:                            )
    DAN CASSIDY                                        )
    701 S. COUNTRY CLUB DR.,                           )
    JEFFERSON CITY, MO 65102                           )
                                                           )
AND                                                        )        JURY TRIAL
                                                           )            DEMANDED:
FARM BUREAU TOWN & COUNTRY INSURANCE                       )
    COMPANY OF MISSOURI;                               )
    SERVE REGISTERED AGENT:                            )
    DAN CASSIDY                                        )
    701 S. COUNTRY CLUB DR.,                           )
    JEFFERSON CITY, MO 65102                           )
                                                           )
AND                                                        )
                                                           )
FARM BUREAU LIFE INSURANCE COMPANY                         )
    OF MISSOURI;                                      )
    SERVE REGISTERED AGENT:                            )
    DAN CASSIDY                                        )
    701 S. COUNTRY CLUB DR.,                           )
    JEFFERSON CITY, MO 65102                           )
                                                           )
AND                                                        )
                                                           )
LEGACY LIFE INSURANCE COMPANY OF                           )
    MISSOURI                                          )
    SERVE REGISTERED AGENT:                            )
    DAN CASSIDY                                        )

1

701 S. COUNTRY CLUB DR.,           )
JEFFERSON CITY, MO 65102           )
                                   )
AND                                )
                                   )
FARM BUREAU NEW HORIZONS INSURANCE )
    COMPANY OF MISSOURI;            )
    SERVE REGISTERED AGENT:         )
    DAN CASSIDY                     )
    701 S. COUNTRY CLUB DR.,        )
    JEFFERSON CITY, MO 65102        )
                                   )
AND                                )
                                   )
MISSOURI FARM BUREAU INSURANCE BROKERAGE INC.   )

              DEFENDANTS            )
    SERVE REGISTERED AGENT:         )
    DAN CASSIDY                     )
    701 S. COUNTRY CLUB DR.,        )
    JEFFERSON CITY, MO 65102        )
                                   )
AND                                )
                                   )
DIRECTOR OF THE MISSOURI DEPARTMENT OF   )
    INSURANCE                       )
    SERVE REGISTERED AGENT:         )
    TRUMAN OFFICE BLDG              )
    301 W HIGH ST., STE 530         )
    JEFFERSON CITY, MO 65101        )

## COMPLAINT

**COMES NOW** Plaintiff Joseph Patton and states his Claims and Causes under both

Chapter 213 RSMo.- the Missouri Human Rights Statute and under 42 USC 2000e and all other

Federal Anti-Discrimination Statutes prohibiting Employment Discrimination and specifically

for retaliation by his employer for reporting violations of the above Statutes and specifically

reporting gender discrimination, hostile work environment based upon sex and sexual

harassment. Specifically, the Defendants retaliated by discharging Plaintiff after he reported

serious sexual harassment, which also constituted gender discrimination and created hostile work

2

environment for a fellow employee and other employees in the Farm Bureau Insurance Agency Office in Lawrence County Missouri. Specifically, the perpetrator of the gender discrimination, sexual harassment and hostile work environment and was a co-employee of the Plaintiff and the victim of such gender discrimination, hostile work environment and sexual harassment. That co-employee, a CSR (Customer Service Representative) in the Lawrence County Farm Bureau Office was LaTosha Weeks.

## PARTIES:

Plaintiff Joseph Patton

1. Plaintiff had been 30+ year employee of the Defendant employer, the Farm Bureau Insurance Companies and specifically Missouri Farm Bureau Insurance Brokerage, Inc. (hereinafter "Brokerage".) He was employed under a written Agreement entered into between himself and the Defendant Brokerage. Such written Agreement is titled "Agent's Memorandum of Employment Terms" and is attached as Exhibit 1.

2. Plaintiff's job duties under his employment Agreement were to sell Defendants' Insurance policies and insurance products. These being the insurance policies and insurance products of the various Defendant Insurance Companies as well as insurance products of other companies sold through Plaintiff's specific employer, Brokerage. Plaintiff was to be compensated for every policy he sold based on a percentage of the premium amount of each policy. This being known as a commission. Each Defendant derived economic benefits and profit from Plaintiffs' work selling Defendants' insurance.

3. Plaintiff had performed the above described duties for well over 30 years in Lawrence County and had been a high producer and a high profit making Agent and Producer for the Defendants.

3

4.     Plaintiff's Agency Office was in Mount Vernon, Mo (Lawrence County Missouri).
       Plaintiff had built a successful "Book of Business" as a captive Insurance Agent of the
       Defendants.

DEFENDANTS:

5.     The Defendants are commonly known as Missouri Farm Bureau, a fictitious entity that is
       utilized to encompass and to describe all of the Defendants including the specific named
       employer, Brokerage. Defendant Brokerage; as stated within Exhibit 1, the "Agent's
       Memorandum of Employment Terms," claims and asserts that it is Plaintiff's employer.

6.     Each of the Defendants have at all times relevant herein the same individuals who serve
       as the Board of Directors for each of the Defendants; and, according to the Missouri
       Department of Insurance, Defendant Missouri Farm Bureau Federation either controls or
       owns, and derives revenue from each of the Defendants who are insurance companies.

7.     The actions of terminating Plaintiff were done at least by agents or representatives of
       Defendant Brokerage and, by the nature of Defendants' corporate structure with their
       collective common interests, and common Boards of Directors, those acting to terminate
       the Plaintiff would necessarily be the agents and/or or representatives of all of each of the
       above-named Insurance Companies and Defendant entities. As such, all named
       Defendants participated in and were jointly responsible for Plaintiff's discharge.

8.     As stated above, Defendants named employer is the Defendant Brokerage and his
       employment "Agreement" defines the duties which he is to perform. Specifically those
       duties are selling insurance policies and insurance products for all and each of the above
       named Farm Bureau Insurance Companies. The obligation to pay Plaintiff's commission

compensation is placed upon the Defendant Brokerage by the stated terms of the Agents "Agreement", Exhibit 1.

9. Defendants' offices are located in Cole County Missouri.

10. The actions of the Defendants in terminating Plaintiff were instigated and performed in Cole County Missouri. Specifically, Plaintiff reported the above described acts of his co-employee of creating a hostile work environment, sexual harassment and gender discrimination when he came to the Defendants Cole County Head Office and explained the improper conduct of his co-employee, another Agent, Skyler Lacey. The decision-making process for terminating Plaintiff was conducted within and committed in Cole County within the Defendant Farm Bureau's Home Offices. As such, venue and jurisdiction are well founded within the United States District Court, Western District of Missouri, Central Division.

11. Defendants acts, as described herein, are violative of 42 USC 2000e et seq. and other Federal Anti-Discrimination in Employment Statutes as well as Chapter 213 RSMo. Defendants in discharging Plaintiff also violated Chapter 407 RSMo., the Missouri Merchandising Practices Act by failing to pay Plaintiff all of his owed and due commissions as defined by §407.911 - .915.

12. Upon the termination of the Plaintiff, the Defendants withheld commissions and failed to pay commissions that were owed to the Plaintiff on the date of his termination or soon thereafter and commissions earned by him after his termination date. All being violations of §407.911 and .912 and .913. Plaintiff's claims against the Defendants are based upon both a Federal question and ancillary or supplemental jurisdiction under Missouri Statutes.

5

JURISDICTION AND VENUE:

13.     This United States District Court, for the Western District of Missouri, Central Division has subject matter jurisdiction (Federal question) in that Defendants' acts of discrimination violated 42 USC 2000e et seq. as well as other United States employment discrimination statutes and provisions. Defendants' acts of retaliation are prohibited by these Statutes and Plaintiff is a protected person under 42 USC 2000e as well as other Federal Anti-Discrimination Statutes in that he reported violations of those Federal Anti-Discrimination Statutes including 42 USC 2000e which prohibit gender discrimination, sexual harassment and a hostile work environment in the work place where gender is the basis for such discrimination. Such Statutes also prohibit the retaliation against those reporting such violations of the Statutes. Plaintiff sustained retaliation almost immediately upon his reporting of the acts of Mr. Lacey; Plaintiff being discharged from his position. Defendants had no legitimate non-discriminatory reason to discharge the Plaintiff as they did on June 4, 2019. Any subsequently claimed reason by Defendants for discharging Plaintiff is both contrived and pretextual.

14.     This Court also has supplemental and ancillary jurisdiction of Plaintiffs' Claims that arise under State Statutes including Chapter 213 RSMo., the Missouri Human Rights Statute and Chapter 407 RSMo., the Missouri Merchandising Practices Act.

15.     The acts that base those claims asserted by Plaintiff, both under 42 USC 2000e and all other Federal Anti-Discrimination Statutes, as well as Chapter 213 RSMo. and Chapter 407 RSMo. took place and arose out of facts that occurred within the United States District Court, Western District of Missouri, Central Division. They specifically arose out of the Home Offices of the Defendants in Jefferson City, MO (Cole County).

Therefore, both subject matter jurisdiction (Federal question) and proper venue are within the United States District Court, Western District of Missouri, Central Division. Cole County is in the Central Division. Defendants' Home Office and Corporate Headquarters is located in Jefferson City, Cole County which is located in the Central Division.

FACTS GIVING RISE TO PLAINTIFF'S CLAIMS:

16. Plaintiff was considered by many within Lawrence County as the "go to guy" for Farm Bureau Insurance. Plaintiff sold Farm Bureau property and casualty Insurance, general liability insurance, auto insurance, high risk insurance, home owners insurance, farm policies, life insurance and other insurance policies and products offered through the Defendants and particularly through the Defendant Brokerage. Plaintiff had built a substantial "Book of Business" over his 30+ years earning on an average of at least $100,000.00 a year, which translates to premium payments to the Defendants in excess of $1,000,000.00 in a given year where Plaintiff would have earned a $100,000.00 in commissions.

17. As a captive insurance Agent, Plaintiff was limited to selling only insurance and insurance products offered by the Farm Bureau Insurance Companies. Had Plaintiff been allowed to sell other insurance companies, he would have earned even more income but out of his loyalty to and in conformity with Exhibit 1, the "Agent's Memorandum of Employment Terms." Plaintiff honored such terms selling only the Defendants' Insurance. As a result, for well over 30 years, Defendants made substantial profits from the efforts and work performed by the Plaintiff.

18. Plaintiffs hired another Agent to work out of the same Agency Office in Mount Vernon, selling Farm Bureau insurance in the Lawrence County area. Such hiring was

7

approximate 2 – 3 years prior to the Plaintiff's discharge. That Agent's name was Skyler Lacey. Mr. Lacey, in his 2 – 3 years of being an Insurance Agent was a very poor performing Agent who did not treat staff, customers or other persons with dignity and respect. His conduct and his performance warranted a discharge well before June 4, 2019.

19. Plaintiff attempted over the first 2 – 3 years of Mr. Lacey's employment as an insurance agent for the Defendant Insurance Companies to help Mr. Lacey in selling insurance and developing his "Book of Business".

20. By the level of Mr. Lacey's performance, at least by the first of January 2019, Defendants would have typically discharged Mr. Lacey as a poor performing Agent.

21. At some point in time the Plaintiff was made aware that Mr. Lacey was making derogatory and gender-based comments about and to the Farm Bureau Customer Service Rep (CSR) in the Lawrence County Farm Bureau Office, who was an employee of Farm Bureau.

22. The CSR, Latosha West, complained to the Plaintiff of Mr. Lacey's comments, statements and attitude. Based upon the training that Plaintiff received from the Defendant Farm Bureau, he believed that Lacey's actions and comments to have been of a clear sexual nature, demeaning to Ms. West and contributed to create both a hostile work environment based upon her gender and also constituted sexual harassment of Ms. West. Mr. Lacey had made comments of a same and similar nature on multiple occasions in the office to other women, including employees, customers and others that would have been present in the Farm Bureau Agency Office.

8

23. It became apparent to the Plaintiff, by Ms. Wests' reporting to him of Mr. Lacey's conduct and comments, that she was adversely affected, was uncomfortable in his presence and was being subjected to the creation of a continuing hostile work environment and was being subjected to gender discrimination and sexual harassment.

24. One specific comment by Lacey to Ms. West was him asking her "are you on the rag?" Ms. West told Plaintiff that she considered such comment to be "verbally obnoxious" to her personally and as a woman. So much so, that she believed that she needed to come to the Plaintiff with regard to her working conditions and Mr. Lacey's conduct and comments.

25. Plaintiff had witnessed Mr. Lacey's rude and obnoxious behavior, conduct and comments prior to the complaints by Ms. West that had been made by Mr. Lacey towards others, including customers and other persons coming into the Agency Office. Such comments had been made in the presence of other employees, including women as well as other customers of Farm Bureau and were of a particular obnoxious nature towards women to not only create a hostile work environment for women but were embarrassing to the Plaintiff as well and were demeaning to women because of their sex.

26. On more than one occasion, Plaintiff had attempted to counsel Mr. Lacey with regard to his offensive comments and conduct and informed him, per written policy of Farm Bureau, such behavior was prohibited and could lead to his being disciplined and potentially discharged.

27. Mr. Lacey's comments were offensive to the Plaintiff and extremely offensive to women including women employees of the Defendants. His comments constituted sexual harassment.

9

28.	By Farm Bureau policies and training, Plaintiff believed that he was under a duty to report gender-based discrimination, hostile work environment based upon sex and conduct of employees that did create a hostile work environment, were gender-based discrimination and constituted sexual harassment. Plaintiff believed that this specific complaint made by Ms. West about Mr. Lacey's comments, constituted a notice and complaint of sexual harassment and that Lacey had clearly created a hostile work environment for Ms. West based upon her gender.

29.	Plaintiff decided to make a report of Mr. Lacey's conduct to his superiors but knew from his training that the report needed to be done respectfully and privately in order to protect the rights of not only the accused but the victim as well. As a result, Plaintiff requested a meeting to take place between his supervisor, Randy DeBoutez and with the Farm Bureau Human Resources Director, Ms. Korsmeyer. Plaintiff specifically requested a meeting to take place in the Jefferson City Home Office of Farm Bureau away from the Lawrence County Agency Office.

30.	Plaintiff's initial contact with regard to making such report was with his supervisor Mr. DeBoutez wherein he requested such meeting, requested such meeting take place in the Jefferson City Home Office of the Defendants in Jefferson City, Missouri and that the Defendants' Human Resources Director be present for such meeting.

31.	On April 19, 2019, Plaintiff drove to Jefferson City for the meeting he had requested and which had been set up by Defendants in response to his request. Once he arrived at the Jefferson City Home Office of the Defendant Farm Bureau he met with his immediate Supervisor Mr. DeBoutez, and with Jena Korsmeyer, the HR Director, as well with the State Sales Director at that time, Brian Cox (hereinafter referred to as "Executives").

10

32. At the April 19, 2019 meeting Plaintiff the Farm Bureau employees immediately asked Plaintiff what it was that they could do to help with regard to his business. Plaintiff immediately informed them that there was a very serious problem within the Farm Bureau Agency Office in Lawrence County and specifically the problems created by Mr. Lacey.

33. Plaintiff informed the Farm Bureau Executives, those described above, of the offensive comments and conduct of Mr. Lacey and specifically those directed at the Lawrence County CSR, Ms. West. Plaintiff indicated that he believed that such comments were both of sexual nature and contributed to both create a hostile work environment, based upon Ms. West's sex but also constituted sexual harassment of Ms. West. He indicated that Mr. Lacey's comments were specifically directed to a Farm Bureau employee Ms. West and specifically described those comments and statements of Mr. Lacey as described above.

34. Plaintiff further informed the three Farm Bureau Executives that Mr. Lacey's comments were the same and similar to other behavior witnessed by the Plaintiff which were of an offensive gender-based nature and generally, or specifically, directed toward women and particularly women who came into the Agency Office.

35. In the meeting on April 19, 2019, Plaintiff also informed the three Executives of the Defendant Insurance Companies, including the HR Director that such conduct of Mr. Lacey toward CSR West was reported by her to Plaintiff and Plaintiff informed the Farm Bureau Officers and Executives that Ms. West was very upset and offended by Mr. Lacey's behavior and conduct.

11

36.     Plaintiff further informed the three Executives, including the HR Director, that such conduct by Mr. Lacey had taken place on other occasions before he received the complaint from Ms. West. Plaintiff informed the Defendants that Mr. Lacey's gender based comments would be directed to other employees, customers or other persons in the Farm Bureau Office, and that such comments were offensive.

37.     Defendants' HR Director, knowing that the Plaintiff had specifically requested her presence at the meeting, indicated that she and the other two Upper Level Executives were not going to discuss Mr. Lacey's conduct, his misconduct and his comments to Ms. West or Ms. West's complaint. Plaintiff took that to mean that they would at least begin an investigation of Mr. Lacey's misconduct and the effects upon CSR West and to do so by Defendants' stated protocol for investigating and preventing sexual harassment, gender discrimination and a hostile work environment based upon gender.

38.     During the course of the meeting, none of the Executives asked any follow up questions or any inquiry as to any additional information about Mr. Lacey's conduct and comments. They never sent anyone to investigation Ms. West's complaints or to interview Plaintiff, the victim Ms. West or the perpetrator Mr. Lacey with regard to Lacey's conduct which Plaintiff reported to each of them.

39.     After the meeting of April 19, 2019, Plaintiff never heard back from anyone from Farm Bureau with regard to his complaints about the actions of Farm Bureau Agent Skyler Lacey or anything with regard to Ms. West's complaints. To the best of his knowledge, Defendants never interviewed the victim, Ms. West or the perpetrator, Mr. Lacey. As far as Plaintiff knows, Defendants did nothing about such misconduct and the environment Ms. West was forced to work in.

40. Plaintiff is of the belief that based upon the conduct of the Defendants, including the HR Director Ms. Korsmeyer, that there was never any follow up, or any investigation or any actions with regard to confirm the validity and truth of the complaints made by Ms. West regarding Mr. Lacey's conduct. To the best of Plaintiffs knowledge, Ms. West, the victim, was never interviewed.

41. The statements made to the Plaintiff on April 19, 2019 were that they were not going to talk about "such situation" clearly referencing Mr. Lacey's comments. By their actions and statements it had become clear to the Plaintiff that these three individuals on behalf of Plaintiff's employer may have already been made aware of Mr. Lacey's offensive conduct towards women in general and that they did not want to hear any additional information about Mr. Lacey's comments, his conduct and certainly no further information about there existing a hostile work environment based upon gender or any sexual harassment caused by Mr. Lacey toward a female a Farm Bureau employee.

42. Plaintiff, after leaving such meeting, never heard back from any personnel of Farm Bureau with regard to Mr. Lacey's misconduct or Ms. West's complaints. Plaintiff knows of no action taken by Defendants with regard to Mr. Lacey's conduct and comments and as far as Plaintiff knows, nothing was done to protect either Ms. West or others from Mr. Lacey's repeated offensive conduct and comments.

43. Defendants' employees, Ms. Korsmeyer, Mr. Cox and Mr. DeBoutez, did make a comment with regard to the limited number of Farm Bureau Legacy Insurance policies sold in Lawrence County offering statement as a subtle criticism of the Plaintiff's job performance. Plaintiff informed them that there are few Hispanic persons in Lawrence County and with Legacy Insurance being an insurance company geared to service

13

Hispanic individuals there would not be a large number of policies sold in Lawrence County with such a small universe of potential customers.

44. On June 4, 2019 approximately 6 weeks after Plaintiff made his complaints to his employer regarding Mr. Lacey's conduct, Defendants, through Mr. DeBoutez and Mr. Cox, appeared unannounced at the Plaintiff's office and informed Plaintiff that he was being immediately discharged from his position as a captive Insurance Agent for Farm Bureau and that he was barred from his office and would not be allowed in his office to retrieve any of his files or any information that he may have had that would have further established the validity and the dates of the conduct of Mr. Lacey, the complaints made by Ms. West and any other relevant information that Plaintiff would have documented in his office about Mr. Lacey's conduct and Ms. West's complaints.

45. Mr. DeBoutez and Mr. Cox removed the Plaintiff's office door and thereafter blocked the Plaintiff from being able to perform his job as an Agent and kept him from being able to not only perform his duties and responsibilities but denied him access to retrieve any important documents with regard to his employment and specifically with regard to those complaints that he had related to Mr. Cox, Mr. DeBoutez and Ms. Korsmeyer about what Mr. Lacey has said and done to CSR West.

46. Defendants had no legitimate non-discriminatory reason to discharge Plaintiff. Such discharge was in clear retaliation for the reporting by Plaintiff of those acts of Mr. Lacey that caused and contributed to cause gender discrimination, sexual harassment and hostile work environment for employee Ms. West and other women.

47. Defendants, upon gaining information from the Plaintiff of the acts of Mr. Lacey as described above failed to conduct any investigation or take any actions consistent with

14

the training that had been provided to the Plaintiff and others about when discrimination takes place in the workplace and is reported. To the best of Plaintiff's knowledge, no one at the Defendant Farm Bureau between April 19, 2019 and June 4, 2019 ever spoke to Ms. West or Mr. Lacey with regard to Ms. West's complaints and the information provided to the Defendant Farm Bureau about Mr. Lacey's conduct. That information and Ms. West's complaint being provided directly to the Defendants by Plaintiff.

48. Plaintiff, on June 4, 2019, specifically inquired and asked of both his Supervisor DeBoutez and Mr. Cox as to why he was being discharged and his office being barred from his entry. Neither DeBoutez or Cox offered any answer and did not articulate any reason, legitimate or otherwise for their actions that day. Defendants have kept Plaintiff from his office and his work files since June 4, 2019.

49. Defendants were given multiple opportunities to express to Plaintiff any legitimate non-discriminatory reason for his discharge and on each occasion Defendants have refused to articulate any reason. Now, after Plaintiff filed his MCHR/EEOC Complaint, Defendants have now contrived a reason for his discharge.

50. The motivating factor in the Defendants' discharge of Plaintiff was that he reported the actions of Skyler Lacey that constituted gender-based discrimination, sexual harassment and the creation of a hostile work environment for employees of the Defendants in the Lawrence County Office including a very hostile work environment for the CSR LaTosha West; all such acts of Mr. Lacey being violative of 42 USC 2000e as well as other Federal Anti-Discrimination in Employment Statutes as well as Chapter 213 RSMo., the Missouri Human Rights Statute.

15

51.    Plaintiff's actions of reporting discriminatory conduct, as he did in fact report to Farm Bureau's Officers and Executives, Ms. Korsmeyer, the HR Director, Mr. Cox the States Sales Director and Mr. DeBoutez, Plaintiff's immediate Supervisor, are acts that are protected both by 42 USC 2000e et seq. as well as all other Federal Anti-Discrimination in Employment Statutes and Chapter 213 RSMo. More specifically those Statutes prohibit retaliation being taken by anyone who reports conduct that violates either of those Statutes.

52.    As a direct and proximate result of the Defendants' retaliation and the discharge of the Plaintiff, Plaintiff has lost the value of his income which on the average for the last 10 years of his employment was at least or more than $100,000.00 per year and for the years 2018 and 2019 was at least an average $60,000.00 per year.  Plaintiff lost his income and his "Book of Business" that he had developed over the 30 year of being a captive Agent. He lost all of that, as a direct result of the Defendants' intentional retaliation against him for reporting conduct that constituted gender discrimination, sexual harassment and a hostile work environment based upon gender.

53.    The measure of Plaintiff's economic damages is at least $60,000.00 per year and likely much higher when considering all of the years of Plaintiff's employment, the income that he generated for the Defendants and the "Book of Business" that the Plaintiff had developed.

54.    After Plaintiff was discharged Defendants continued to withhold commissions that were owed to the Plaintiff and intentionally withheld commissions that Plaintiff was owed to him on and before June 4, 2019 and were owed to him from work that he performed prior to June 4, 2019 as well as commissions that he would have earned after his date of

16

termination which violates Chapter 407, the Missouri Merchandising Practice Act, which gives a Cause of Action for such withholding of commissions under §407.911 - .913, a claim stated herein as a Supplemental or Ancillary Claim.

55. The Defendants further and intentionally withheld from Plaintiff his 401K and refused to pay it to Plaintiff at the time of his termination and thereafter. All exhibiting the animus of the Defendants against the Plaintiff for reporting the violations of 42 USC 2000e and Chapter 213, the Missouri Human Rights Act.

56. Plaintiff had the fullest intention and ability to continue to work as a very productive Insurance Agent for the Defendants and had planned on working at least another 5 years. Defendants by their intentional acts motivated by his reporting of sex discrimination have denied to Plaintiff the ability to earn a living over those next 5 years and to be able to make income from his developed "Book of Business" and further development of that business. Plaintiff has sustained, at a minimum, $300,000.00 in lost income and more likely than not, such loss exceeds $500,000.00.

57. Defendants' acts of discharging the Plaintiff were calculated, intentional and were made to make an example of Plaintiff to other Agents and employees of the Defendants; that example being "do not report employee discrimination". "If you do report gender discrimination, sexual harassment or a hostile work environment, you can expect to be fired from your job, regardless of how successful you are as an Agent or employee".

58. Plaintiff filed his MCHR/EEOC Complaint within less than 180 days of his June 4, 2019 discharge having filed his complaint on November 25, 2019 in MCHR Case Number E-11/191-51685 and EEOC Case Number 28E-2020-00245. That Complaint was jointly filed with the MCHR and EEOC. It is attached as Exhibit B.

59. Plaintiff received his Right to Sue letter that was issued by the EEOC on September 15, 2020. This lawsuit is filed within 90 days of the issuance of that Right to Sue Letter. Plaintiff has now exhausted all administrative remedies required of him in order to seek a Right to Sue and file his lawsuit in the US District Court. Plaintiff's Complaint has now been filed within less than 90 days of the issuance of that Right to Sue letter.

60. Defendants are subject to both the Missouri Human Rights Statute, Chapter 213 RSMo. as well as the Missouri Merchandising Practices Act, Chapter 407 RSMo. and specifically the denied sales commission provisions of §407.911, §407.912 and §407.913 RSMo. This Court has supplemental and ancillary jurisdiction for Causes of Action brought under those two Statutes by the Plaintiff.

61. At the time Plaintiff was discharged he was owed commissions for work he performed for Defendants including commissions on business that was renewed by policyholders that had Plaintiff as the originating Agent. Due to Defendants' actions of taking and denying to Plaintiff his work files, Plaintiff does not know the exact amount nor does he have access to those files that would show all of those commissions that were owed and due to him on June 4, 2019 and thereafter from his work performed prior to June 4, 2019. Those commissions and their denial of payment to the Plaintiff violates §407.912 et seq. giving rise to a Cause of Action that is allowed under §407.911 - .913 et seq RSMo.

62. All of the Defendants acts described herein were intentional and calculated to not only injure and harm the Plaintiff and deprive him of his employment and income but were also done intentionally in order for the Defendants to not have to take any corrective action against an offending employee who had created a gender based hostile work environment and committed acts of sex discrimination and sexual harassment. By the

18

Defendants' acts against Plaintiff, they intentional disregarded and did not comply with either 42 USC 2000e et seq. or Chapter 213 RSMo. the Missouri Human Rights Statute.

## COUNT I
### 42 USC 2000e – RETALIATORY DISCHARGE FOR REPORTING GENDER DISCRIMINATION, SEXUAL HARASSMENT AND CREATION OF HOSTILE WORK ENVIRONMENT – SUPPLEMENTAL CLAIMS UNDER CHAPTER 213 RSMo.

63. Plaintiff restates paragraphs 1 – 62 above as if fully restated herein and incorporates them by reference.

64. Defendant directly retaliated against the Plaintiff for reporting the misconduct of co-employee Skyler Lacey. Lacey's conduct and comments constitutes gender discrimination, sexual harassment and the creation of a hostile work environment for an employee of the Defendant Farm Bureau. Such acts of Mr. Lacey are contemplated by and constitute prohibited acts under 42 USC 2000e et seq. as well as other Federal Anti-Discrimination in Employment Statutes and Chapter 213 RSMo. the Missouri Human Rights Act.

65. The actions of Plaintiff in reporting Mr. Lacey's conduct is also protected by the above Statutes and gives the Plaintiff a viable Cause of Action for wrongful discharge when the Defendants' acts of discharging Plaintiff were done in retaliation against Plaintiff for reporting the offensive acts and comments of Lacey which constituted Statutory violations of 42 USC 2000e et seq. and other Federal Anti-Discrimination in Employment Statutes and Chapter 213 RSMo.

66. Defendants were informed by Plaintiff on April 19, 2019 of the acts of the Defendants' employee Skyler Lacey as described above. Such reporting was made by the Plaintiff. Plaintiffs reporting is a protected action under the above described Statutes.

19

67. Employee LaTosha West is an employee of the Defendant Farm Bureau, protected by both Chapter 213 as well as 42 USC 2000e et seq. and all other Federal Anti-Discrimination in Employment Statutes and specifically she is to be free of "gender discrimination in the work place". Ms. West is likewise to be free of having to work in a hostile work environment based upon her sex and being subjected to sexual harassment. Here, Farm Bureau employee Lacey, through his comments and actions created what constitutes gender discrimination, the creation of a hostile work environment based upon Ms. West's sex and sexual harassment of Ms. West by Farm Bureau employee, Mr. Lacey.

68. Plaintiff's reporting of such prohibited acts to Defendants is also a protected act under the above Statutes. Particularly, Plaintiff is protected from being retaliated against by his employer for reporting violations of 42 USC 2000e and other Federal Anti-Discrimination in Employment Statutes and Chapter 213 RSMo.

69. After exercising his protective rights by reporting Lacey's conduct to his employer on April 19, 2019 the Defendants specifically retaliated against the Plaintiff by discharging him on June 4, 2019. The animus of their acts is further illustrated by their failure to investigate or take any action with regard to Plaintiff's complaints of gender discrimination, a hostile work environment and sexual harassment through the acts of Defendants' employee Lacey. The actions and the only actions taken with regard to Plaintiffs protected complaints is to discharge the Plaintiff. At the time of the Plaintiffs discharge the Defendants had no legitimate non-discriminatory reason to discharge the Plaintiff. Any articulated reason thereafter is pre-textual and contrived.

70. After Plaintiff reported the conduct of Lacey to his Supervisor and the Executive Staff of the Defendant Farm Bureau on April 19, 2019, Defendants did nothing to investigate Plaintiff's and Ms. West's claims and complaints. Defendants never interviewed Ms. West, never re-interviewed the Plaintiff and never interviewed Mr. Lacey or take any actions one way or the other regarding Mr. Lacey's conduct. Defendants did nothing to either protect Plaintiff from retaliation or to protect their employee Ms. West from the conduct of Mr. Lacey.

71. At the time of Plaintiffs discharge, Mr. Lacey was continuing in his employ of the Defendants as an Insurance Agent.

72. Defendants' animus of their intent to discriminate and harm Plaintiff for reporting Mr. Lacey's conduct was further illustrated when Defendants refused to allow Plaintiff to have or "roll over" his IRA, refuse to allow him to have access to his work files and deny to him those commissions owed to him at his termination on June 4, 2019.

73. Ultimately, the Defendants did retaliate against Plaintiff for making his Complaints regarding Mr. Lacey's conduct and did in fact retaliate against the Plaintiff on June 4, 2019 by discharging Plaintiff from his position as Agent for the Defendant Farm Bureau Insurance Companies. Such discharge lacked any legitimate non-discriminatory reason. Further, when asked why he was being discharged, Defendants refused and have continued to refuse to inform Plaintiff of any legitimate non-discriminatory reason for his discharge of June 4, 2019.

74. The Defendants motivating factor in discharging Plaintiff was that he engaged in protected conduct of reporting gender discrimination, hostile work environment based

21

upon sex and sexual harassment committed by an employee of the Defendants against a female employee of the Defendant.

75.    The conduct of the Plaintiff in reporting the acts of Mr. Lacey, as described herein, are in fact protected by 42 USC 2000e and other Federal Anti-Discrimination in Employment Statutes as well as Chapter 213 RSMo.  In otherwords, those Statutes protect a person who reports gender discrimination, sexual harassment and a hostile work environment based on sex.

As a direct and proximate result of Defendants conduct, Plaintiff has sustained the following damages:

(a)    He has lost income of at least a value of $60,000.00/year and more likely than not in excess of $100,000.00/year;

(b)    He has embarrassed by being subjected to a summary discharge at his office in front of his co-employees and friends.  There existing any legitimate non-discriminatory reason for such discharge;

(c)    In order to pursue his claims for damages and the actions taken against him by the Defendants, he is necessitated to retain Counsel to pursue his claims and causes that are allowed for under 42 USC 2000e and Chapter 213 RSMo.  As such he must incur attorney fees and expenses of litigation; and

(d)    Plaintiff suffered other monetary and economic losses and damages as Defendants continued their retaliation after Plaintiff was terminated by denying to Plaintiff his 401K and denying to him those commissions that he had earned and were due for work prior to April 19, 2020.  Defendants further discriminated against Plaintiff

by failing to pay commissions to him for work that was performed before June 4, 2019 but commissions were generated after June 4, 2019.

76. Plaintiff further prays for an award of Punitive damages against the Defendants as is otherwise allowed for under 42 USC 2000e et seq and other Federal Anti-Discrimination in Employment Statutes and as allowed for under Chapter 213 RSMo.

**WHEREFORE,** having stated his Causes of Action, under 42 USC 2000e and all other applicable Federal Anti-Discrimination in Employment Statutes and Chapter 213 RSMo. Plaintiff prays the Court to enter Judgment against the Defendants and each of them for his wrongful discharge, specifically being retaliated against for reporting conduct that violates 42 USC 2000e et seq. and other Federal Anti-Discrimination in Employment Statutes and Chapter 213 RSMo. Plaintiff further prays for an award of damages that he has sustained including:

(1) at least $500,000.00 in lost income;

(2) $200,000.00 as and for the embarrassment caused to him for being discharged from a long term employment;

(3) At least an additional $120,000.00 in unpaid commissions that Defendants refuse to pay Plaintiff after he was discharged;

(4) An award of attorney fees and costs in bringing this action; and

(5) Any and all other relief that is afforded to him under 42 USC 2000e as well as other Federal Anti-Discrimination in Employment Statutes and Chapter 213 RSMo.

## COUNT II
### §407.911, §407.912, §407.913 and §407.915 – THE MISSOURI SALES COMMISSION ACT – MISSOURI MERCHANDISING PRACTICES ACT

23

77. Plaintiff restates paragraphs 1-76 above as if fully restated here in and incorporates them by reference.

78. When discharging Plaintiff on June 4, 2019, Defendants owed Plaintiffs multiple commissions that were earned and due and owing to him as an insurance Agent and as described within exhibit 1 and as described in this Petition.

79. Defendants have refused to pay such commissions to Plaintiff even though Plaintiff has requested that all of his commissions be paid to him.

80. Defendants locked Plaintiff out of his office on the morning of June 4, 2019 and have not allowed him to retrieve his work files. These are files that would establish and illustrate all commissions that the Plaintiff is due and owing on June 4, 2019 and would be due and owing thereafter.

81. When Plaintiff was discharged he would have been owed commissions as of June 4, 2019. Defendants have refused to pay or make an accounting of those commissions owed.

82. As a direct and proximate result of the Plaintiffs "Book of Business" that he developed over the years as well as his ongoing servicing of his policyholders, Plaintiff would have earned substantial and additional commissions after June 4, 2019 which Defendants have refused to pay or even account for. These would be commissions earned on renewed policies originally sold and/or serviced by the Plaintiff and that were a part of his "Book of Business" on June 4, 2019.

83. Due to the acts of Defendants in denying to Plaintiff his business files, he cannot state with any great specificity all of his "Book of Business" and all of the commissions that he would have been due and owing to him as of June 4, 2019 and all commissions earned

24

thereafter as his "Book of Business" policyholders would renew their policies. For at least a one year period of time, based upon Plaintiffs knowledge of his "Book of Business" he would have earned commissions well in excess of $60,000.00 for that one year period after June 4, 2019. Plaintiff would have likely received and earned substantial additional commissions from renewals of insurance policies that were Plaintiffs "Book of Business" on the date of his discharge June 4, 2019. He would have earned at least $60,000.00 in each year after his termination from such commissions.

84. §407.912.1(1) – (3) provides for all commissions that would have come due after June 4, 2019 until Defendants had paid all commissions owed to the Plaintiff. As of the date of the filing of this Petition, approximately 18 months of commissions or approximately $90,000.00. Such commissions continue to be owed and accrue until Defendants pay all owed commissions.

85. §407.912.3 provides that, "all commissions then due shall be paid within 30 days of such termination." It further provides that "any and all commissions which become due after the date of such termination shall be paid within 30 days of becoming due." Plaintiff has multiple commissions that come due and owing to him each time one of his "Book of Business" policyholders renews their policies with the Defendant Farm Bureau insurance companies.

86. §407.913 provides that "any principal that fails to timely pay the sales representative commissions earned by such Sales Representative shall be liable to the Sales Representative in a Civil action for the actual damages sustained by the Sales Representative and an additional amount as if the Sales Representative was still earning commissions, calculated on an annualized pro-rata basis from the date of termination to

25

the date of payment." Plaintiff's damages under this provision for "additional amounts" would be equal to or greater than $90,000.00 to date, the date of the filing of this lawsuit (annualized at $60,000.00 per year. June 4, 2019 – December 4, 2019 = 1 ½ years.)

87.    §407.913 provides for an award of attorney fees and costs to the prevailing party.

88.    Defendants have continually refused to pay Plaintiff his commissions as described herein and as provided for being owed and due per the terms of §407.911 - .915 and are subject to the "additional amount" of Statutory damages provided for in §407.913 as quoted above. Defendants have in fact continually refused to pay to the Plaintiff those commissions that he would have earned on his book of business after June 4, 2019.

89.    Plaintiff necessitates from the Defendant his work records and files to be able to show and illustrate his "Book of Business" including his sales of insurance policies that would have generated new commissions due before, on and after June 4, 2019 but not paid by the Defendants as well as the amount of those commissions that would have been due and owing under the above described provisions of §407.912 and .913, particularly commissions that would have been earned by Plaintiff on his "Book of Business" as that "Book" existed on and before his termination of June 4, 2019. Plaintiff believes that such amounts would equal or exceed $60,000.00 for each year thereafter. With his work files and records including all records of his "Book of Business" Plaintiff would be able to make such calculation with greater specificity.

**WHEREFORE,** Plaintiff prays the Court enter Judgment against the Defendants under §407.911 - .915 for:

(1)    All commissions Plaintiff was due and owing on June 4, 2019;

26

(2)     All additional amounts he would be owed thereafter until those commissions are paid and as allowed under §407.913;

(3)     For all commissions that would have become due and owing after June 4, 2019 on Plaintiffs "Book of Business" as it existed prior to his termination and as would have become due and owing each year thereafter; and

(4)     An additional amount as and for Plaintiffs recoverable damages as allowed for such unpaid commissions as described in §407.913 RSMo.; and

(5)     For all attorney fees and costs incurred to Plaintiff in pursuing this lawsuit; and

(6)     All other relief that Plaintiff is entitled to recover under §407.911 - .915.

Plaintiff further prays for an award of Punitive Damages as would otherwise be recoverable and assessable against the Defendants under Chapter 407 RSMo. the Merchandising Practices Act.

Respectfully submitted:

/s/ Roger G. Brown
Roger G. Brown & Associates
216 E. McCarty St.
Jefferson City, MO 65101
573-634-8501
jclaw@rogerbrownlaw.com

/s/ William C Hopkins
216 E. McCarty St., Ste B
Jefferson City, MO    65101
William@whopkinslaw.com

27